**Will Bennett BROWNING, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15214.**

Court of Criminal Appeals of Oklahoma.
May 27, 1970.

**308**

Robert C. Schacher, Lawton, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Max A. Martin, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

BUSSEY, Judge:

This is an appeal by Will Bennett Browning, hereinafter referred to as defendant, from a judgment and sentence rendered against him in the District Court of Comanche County for the crime of Arson in the First Degree, After Former Conviction of a Felony, wherein he was sentenced to serve a term of ten years imprisonment in the state penitentiary.

On appeal defendant argues that (1) the defendant's waiver of his constitutional rights was not an intelligent waiver and therefore invalid, and (2) the defendant's confession should be excluded because it was involuntarily given.

We believe that the ruling of the Honorable Toby Morris, Trial Judge, at the conclusion of the evidence, adequately sets forth the facts adduced on said Motion, to dispose of the contentions here presented. The following appears at pages 120–123 of the transcript of testimony on the Hearing on Motion to Suppress:

REMARKS AND RULING OF THE COURT:

"All right. In addition to the arguments that you gentlemen have made, and I want to compliment you on them, I think both of you have made good arguments relative to your respective viewpoints about these motions, and I would like for the record to show that it is very, it is very probable, at least in the mind of the court, that if the statement that the Defendant admits signing had been made to Gerald Chadwick, it definitely should have been, should be suppressed for the reason that the police officer, Gerald Chadwick, although used no violence, and by way of suggesting there was no violence ever used against the Defendant in this case, physical violence, but that in view of the fact that Chadwick told him in substance that if he didn't tell the truth and didn't give statements that he would get him twenty years, or words to that effect, of course, he had no right to make that statement—he could not have controlled it—but nevertheless, it was in my judgment such a statement that would have destroyed the voluntariness of the statement, so if Officer Gerald Chadwick had taken the statement, in my judgment the motion definitely would have been good, but Gerald Chadwick did not take the statement. He did take the waiver but not the statement, so in my judgment this man had been advised of his rights rather fully, once orally by the arresting officer, and then later at the police station, and he signed a written waiver, and in my judgment knew what he was signing. Now, the record shows that after he had talked to Chadwick, and I believe Mr. Dean was the other party present, he did not like their attitude, or especially Mr. Chadwick's attitude, and there was definitely

some feeling between the Defendant and Chadwick, and he voluntarily asked to take the statement before Mr. Lindgren, the man who actually took the statement. Now, he voluntarily did that after he had been warned of his rights, once orally, and once in writing, so I think when he made the statement to Lindgren, the man he wanted to talk to and asked to talk to, then whatever statement he made was a voluntary statement and he did make the statement to that officer. Now, the record shows that he has finished the ninth grade in school and had some other schooling, I believe in the Peace Corps, and the court has carefully watched his appearance on the stand. His answers to all questions in my judgment were indications of intelligence and maybe his evasion of some answers also indicated intelligence, a reasonable amount of intelligence, and in addition to that, his signature on both the waiver and the statement is unusually well written. I think it is true that a man might sometimes write rather well and not read so well, but ordinarily if a man writes as good a hand as the Defendant does he can also read well, and when the witness took the stand, the Defendant took the stand, he read real well the first paragraph of this waiver. Later on he appeared not to read so well, but the court took in consideration the circumstances of that. Then in addition to that, the officer stated that there was several typographical errors, and there are—it is apparent on the face of the statement— and that the officer asked the Defendant to initial those, and the court has carefully examined this statement and it appears that he initialed every material typographical error in the statement. So taking the argument of you gentlemen in consideration and the matters that the court has pointed out, the court is of the opinion that, taking the overall situation that the Defendant knew what he was doing when he signed the waiver, and that he knew what his rights were and that the statement he made was a voluntary statement and the court so holds and will overrule the motion to suppress in each case."

[To which the defendant objected, excepted and the same were allowed.]

 Defendant's argument under his first proposition is that:

(1) His rights were not explained to him;

(2) That he was only given a few minutes to read the rights form;

(3) That this opportunity to read the forms occurred in a hostile environment;

(4) That he is a person with little education;

(5) That he did not understand his rights.

As can be seen from the above remarks and ruling of the court, the trial court took note of the following facts:

(1) That defendant finished the ninth grade in school;

(2) That defendant received other schooling in the Peace Corps [actually in the Job Corps];

(3) That defendant's demeanor on the witness stand indicated intelligence;

(4) That his signature on the statement and waiver was unusually well written;

(5) That defendant read the first part of the waiver well while he was testifying at the hearing on the Motion to Suppress;

(6) That defendant initialed every material typographical error in that statement.

We are of the opinion that the trial court had an opportunity to observe the defendant and other witnesses appearing on the Motion to Suppress and that the weight and credibility to be given their testimony and reasonable inferences to be made therefrom are matters that the trial judge was in a better position to determine than is this Court. Since there is ample evidence to support the ruling of the trial court on this issue, we are of the opinion that his ruling should not, therefore, be disturbed on appeal.

 This leads us to a consideration of the defendant's second contention that in

light of the trial court's finding that had the confession been made to Officer Chadwick by the defendant it would have probably been inadmissible because of that officer's threats, it therefore follows that the confession made to Mr. Lindgren was rendered inadmissible by virtue of the threat previously made. This contention ignores the obvious fact that because of the personality conflict between the defendant and Officer Chadwick, the defendant requested that he be allowed to talk with Mr. Lindgren with whom he was acquainted. His confession made to Lindgren thus came about after the defendant had been advised of his constitutional rights under *Miranda* and had waived the same, and as a result of his request. Under these circumstances it is apparent that the confession was freely and voluntarily made.

In summary, we are of the opinion that the defendant knowingly and intelligently waived his constitutional rights; that the statement given thereafter was given voluntarily; and the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J., and NIX, J., concur.